IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| J. M. R., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:20-cv-00051-CHW |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| Defendant. | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## BACKGROUND

This case has returned to the Court following a prior remand in *JMR v Comm'r*, No. 5:17-cv-302 (CHW). In that prior action, the Court rejected Plaintiff's arguments relating to an ALJ's treatment of Plaintiff's subjective symptoms but nevertheless remanded based on the ALJ's failure to articulate meaningful grounds to depart from a VA disability rating of 100%.

On remand, proceedings returned to the ALJ level of review for another hearing, along with the opportunity for Plaintiff to submit additional evidence. On review of the updated record, the Commissioner again concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff now seeks a second round of judicial review before this Court. Plaintiff's

1

current arguments resemble her prior arguments: Plaintiff contends that (1) the ALJ offered inadequate grounds to discount the VA disability rating, and that (2) substantial evidence does not support the ALJ's RFC analysis due to the ALJ's deficient consideration of five criteria, including Plaintiff's subjective symptoms. As discussed below, the ALJ gave, on remand, a satisfactory explanation for his decision to depart from the VA disability rating, and substantial evidence supports the ALJ's RFC assessment. Accordingly, on this round of judicial review, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The Court's detailed evaluation of Plaintiff's prior medical record can be found in its decision in *JMR v Com'r*, Case No. 5:17-cv-302, CM/ECF Docket No. 12, pp. 3–8 (Sept. 21, 2018). *See also* (R. 1166–85). The new medical records submitted in this action begin in early 2012, when a CT scan revealed "clear sinuses" despite Plaintiff's reports of sinus blockage. (R. 1476). Later that year, medical imaging revealed signs of appendicitis that had been causing Plaintiff to suffer from abdominal pain, (R. 1475), and Plaintiff underwent a successful appendectomy procedure in May 2012. (R. 1473).

In November 2012, Plaintiff sought care for intractable vomiting attributed to a stomach flu. (R. 1448). Based on similar persistent complaints, Plaintiff sat for an esophageal biopsy procedure in February 2013, but only normal results were observed, and ensuing medical records show diagnoses of gastritis, (R. 1437), hemorrhoids, (R. 1422), or dehydration (R. 1413). An abdominal CT scan obtained in November 2013 similarly revealed little of note. (R. 1339).

In July 2014, Plaintiff presented to Houston Healthcare with symptoms of headaches and dizziness. (R. 1392). Plaintiff was diagnosed with cephalgia, and her condition improved with the intake of fluids. (R. 1395–97). In December 2014, Plaintiff reported abdominal pain, which doctors attributed to "something she ate." (R. 1385). Imaging of Plaintiff's abdomen revealed no abnormalities. (R. 1391).

The next available medical records date from March 2016, when Plaintiff returned to Houston Healthcare with complaints of headaches. (R. 1367). Plaintiff was instructed to rest and drink plenty of fluids. (R. 1373). Plaintiff returned to Houston Healthcare in October 2016 with complaints of diarrhea, nausea and cramping. (R. 1351). Plaintiff was diagnosed with dehydration and an electrolyte imbalance. (R. 1354).

That same month, October 2016, Plaintiff sought treatment from Neurology Associates, LLP, for heartburn, nausea, headaches, abdominal pain, and right shoulder pain. (R. 1634). A tentative diagnosis of GERD was given, although the medical record also reveals suspicion regarding a possible food allergy. (R. 1637). By November 2016, Plaintiff's symptoms of diarrhea and abdominal pain had subsided, and the record indicates that Nexium was at least partly successful in alleviating Plaintiff's heartburn. (R. 1630). The record also indicates that Plaintiff was instructed on the "benefits of good nutrition and exercise for the maintenance of a healthy cardiovascular system and healthy blood glucose levels." (R. 2768).

In April 2017, Plaintiff sought care for complaints related to right hand carpal tunnel syndrome, for which Plaintiff was not then taking any medication. (R. 2157). Plaintiff rated the pain at 4 of 10. (R. 2158). Plaintiff was instructed to wear a splint at night, and to engage in strengthening activities. (R. 2160). In May 2017, on reports of cloudy urine and diarrhea, Plaintiff was instructed to drink more water, avoid caffeine and alcohol, and increase her fiber intake.

4

(R. 2634–35). In October 2017, on reports of spinal pain, a cervical spine MRI revealed signs of osteoarthritis at the C5-6 level. (R. 2053). The record shows some uncertainty on the part of medical sources regarding whether Plaintiff's reported extremity pain flowed from carpal tunnel syndrome, or instead from radiculopathy. *See* (R. 1588–90). In any event, Plaintiff primarily reported symptoms of pain and numbness that made sleep difficult but that were alleviated by the use of a nighttime wrist brace. (R. 1645).

Also in October 2017, based on Plaintiff's continued report of right-handed "atypical carpal tunnel [symptoms]," Plaintiff underwent a radiograph study that revealed nothing of note. (R. 1499–1500). In November 2017, Plaintiff was diagnosed with sinusitis, for which she was instructed to treat with warm compresses, increased water intake, and ibuprofen or Tylenol. (R. 1515, 2042). In January 2018, an EMG study of Plaintiff's left arm, related to symptoms associated with possible carpal tunnel syndrome in that extremity, revealed a "mild median neuropathy at the left recess." (R. 1481). In May 2018, Plaintiff sought care for an upper respiratory infection along with a herpetic rash, which she treated with Bactrim. (R. 2645).

In August 2018, Plaintiff underwent a gastric endoscopy and biopsy procedure. (R. 1925). The procedure revealed evidence of an intact wrap from a prior Nissen fundoplication procedure. (*Id.*). In October 2018, Plaintiff reported experiencing bloody mucus, for which she was instructed to stop treating with Flonase and to "stop cleaning nostrils with kleenex." (R. 1873). In January 2019, Plaintiff reported continued symptoms of congestion, which she treated with Mucinex. (R. 1867). Plaintiff's renewed or reinvigorated congestion symptoms appear to have arisen in connection with an inflamed Thornwaldt's cyst. (R. 1670). In March and April of 2019, Plaintiff altered her gastritis treatment from PPIs (proton pump inhibitors) to Carafate. (R. 2259, 2671–77).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2015, her alleged onset date. (R. 1044). At step two, the ALJ found that Plaintiff had the following severe impairments: "irritable bowel syndrome/gastritis, cystitis, obstructive sleep apnea, chronic sinusitis with 'post nasal drip,' benign hypertension, headaches, plantar fasciitis, degenerative disc disease, degenerative joint disease of the right shoulder, carpal tunnel syndrome, and obesity." (R. 1044). The ALJ further determined that Plaintiff's temporomandibular joint disorder (TMJ), reported vision deficits, and a nasal cyst were non-severe impairments because they resulted in few or no work-related limitations. (R. 1044).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1044). Therefore, the ALJ assessed Plaintiff's RFC, and found that through her date last insured, Plaintiff could perform sedentary work with the following exceptions:

> She should lift and/or carry a maximum of ten pounds. She should avoid prolonged standing and walking. She should not perform overhead work with her right, dominant hand and she is limited to frequent, but not constant, handling, fingering, and feeling. She requires onsite access to a bathroom. She should avoid concentrated exposure to excessive pulmonary irritants. The claimant should not work on ladders, ropes, or scaffolds, or at unprotected heights.
>
> (R. 1046)

The ALJ further explained the reasoning underlying his RFC assessment as follows:

> To account for the combination of the claimant's impairments and positive physical examination findings, the residual functional capacity limits the claimant to sedentary exertion work and no work on ladders, ropes, scaffolds or at

unprotected heights. To specifically account for her right shoulder impairment and findings of limited range of motion in the right upper extremity, the residual functional capacity limits her to no overhead reaching with the right hand. To account for her carpal tunnel syndrome, the residual functional capacity limits her to frequent handling, fingering, and feeling. To account for her IBS and cystitis, the residual functional capacity includes a restriction to needing on-site access to a bathroom. To account for her headaches and sinusitis, the residual functional capacity limits her to exposure to excessive pulmonary irritants.

(R. 1053)

Based on his RFC assessment, the ALJ determined, at step four, that Plaintiff was capable of performing her past relevant work as a personnel manager, both as that job is generally performed and as Plaintiff actually performed it. (R. 1054). Based on this step four finding, the ALJ concluded his assessment and ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

**ANALYSIS**

Plaintiff raises two categories of argument in support of her request for a second judicial remand. First, Plaintiff contends that the ALJ again did not adequately evaluate Plaintiff's VA disability rating of 100%. Second, Plaintiff argues that substantial evidence does not support the ALJ's RFC finding because the ALJ erred in his evaluation of Plaintiff's (i) subjective symptoms, (ii) headaches, (iii) obesity, (iv) chronic diarrhea, and (v) carpal tunnel syndrome. For the reasons discussed below, Plaintiff's arguments do not warrant another remand.

**(1)    VA Disability Rating**

Plaintiff first argues that the ALJ "fail[ed] to provide any legitimate or accurate reason" not to defer to Plaintiff's VA rating of 100% disabled. (Pl.'s Br., Doc. 11, p. 12). This argument relates to the Court's prior basis for remanding. In a previous unfavorable decision, the ALJ

explained that the VA and the Social Security Administration employ different disability standards and that VA determinations are not binding upon the SSA. (R. 17). In turn, the Court explained that the mere difference in legal standards, along with the ALJ's vague assertion that the "evidence [did] not support a finding of disability," (*id.*), did not alone give a sufficient foundation for meaningful judicial review.

This time around, the ALJ provided a more thorough explanation of his decision to discount Plaintiff's VA disability rating, and substantial evidence supports the ALJ's decision to do so. Among other factors, the ALJ individually analyzed Plaintiff's impairments of plantar fasciitis (accounting for a 50% VA disability rating), overactive bladder (accounting for a 10% VA disability rating), migraines (accounting for a 30% VA disability rating), cervical strain (accounting for a 20% VA disability rating), right shoulder degeneration (accounting for a 20% VA disability rating), sinusitis (accounting for a 10% VA disability rating), intestinal issues associated with irritable bowel syndrome (accounting for a 30% VA disability rating), esophageal issues associated with GERD (accounting for a 10% VA disability rating), and Plaintiff's TMJ disorder (accounting for a 20% VA disability rating). *See* (R. 1052–53). Plaintiff does not argue that the ALJ's specific assessment of any of these individual medical impairments was deficient. Instead, Plaintiff raises four generalized arguments in an attempt to show that the ALJ's overall treatment of the VA disability rating was once again deficient.

None of Plaintiff's arguments undermines the ALJ's decision to discount Plaintiff's VA disability rating. Plaintiff first asserts that the ALJ erred by relying on medical evidence, as opposed to the opinions of medical doctors. No authority supports Plaintiff's assertion, and in fact, Eleventh Circuit authority makes clear that the ALJ "permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Castle v. Colvin*, 557

F. App'x 849, 854 (11th Cir. 2014) (quoting *Manso–Pizarro v. Sec'y, Health and Human Servs.*, 76 F.3d 15 (1st. Cir. 1996)). The ALJ in this case drew such commonsense conclusions. For example, regarding Plaintiff's overactive bladder or urinary incontinence, the ALJ cited medical records stating that Plaintiff "did not require the wearing of absorbent material," that Plaintiff's possible gastric cystitis showed signs of improvement by February 2015, and that subsequent lab tests and imaging studies revealed no abnormalities. (R. 1052). The ALJ's reliance upon the raw medical evidence in this manner was appropriate.

Second, Plaintiff argues that the ALJ's step-two findings of "severe impairments," when combined with VA's prior disability ratings, mandates a finding of disability under the Social Security Act. Plaintiff argues as follows:

> The VA determined Plaintiff was 100% disabled based upon her combination of impairments. The ALJ agreed that they were "severe" impairments. As a result it should follow that these severe impairments, in combination, result in a finding of disabled.
>
> (Pl.'s Br., Doc. 11, p. 9)

Step two of the Social Security sequential evaluation process is a threshold inquiry that may be satisfied by a showing, on the part of an applicant, that a medical impairment is "severe," meaning it causes at least *de minimis* interference with the applicant's work ability. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Once this threshold showing is satisfied, the ALJ is required to proceed to later steps in the sequential evaluation process. No legal authority supports Plaintiff's theory that an applicant's successful step two showing, when paired with VA disability ratings, should end the inquiry. Accordingly, the ALJ did not err by proceeding to subsequent steps after his step two finding that Plaintiff suffers from severe impairments.

Third, Plaintiff asserts that the ALJ failed to consider the combined effect of her impairments. The ALJ expressly stated that he had considered the combined effect of Plaintiff's impairments (R. 16). This statement by the ALJ serves as "evidence that he considered the combined effects of [Plaintiff's] impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Plaintiff cites no contrary evidence and gives no countervailing argument to show that the ALJ's combination assessment was deficient, and for that reason, Plaintiff's third argument fails to offer grounds for a remand.

Fourth and last, Plaintiff cites a possible dating inaccuracy in the ALJ's opinion. The ALJ stated that Plaintiff's VA "disability finding was made based on an examination conducted in November 2014," (R. 1052), but the cited record, exhibit 21F, contains medical evidence dating from the period between November 2014 to August 2015. To the extent the ALJ's partial dating inaccuracy was an error, that error was harmless because the ALJ's point is clear. The point, which the medical record supports, is that "the VA's decision that [Plaintiff] was disabled conflicted with more recent medical evidence in the record." *Noble v. Comm'r*, 963 F.3d 1317, 1330 (11th Cir. 2020). Accordingly, Plaintiff's fourth argument also fails to offer grounds for another remand.

**(2)    RFC Analysis**

In addition to challenging the ALJ's treatment of the VA disability rating, Plaintiff also argues that the ALJ's RFC analysis was deficient because of the ALJ's flawed assessment of criteria relating to Plaintiff's: (i) subjective symptoms, (ii) headaches, (iii) obesity, (iv) chronic diarrhea, and (v) carpal tunnel syndrome. For the reasons discussed below, none of Plaintiff's arguments undermines the ALJ's RFC analysis such that a second remand is required.

Regarding Plaintiff's (i) subjective symptoms in general, the ALJ did not commit a *per se* error by discounting, in part, Plaintiff's account of her symptoms and limitations as contained in a

May 2016 Adult Function Report. (Ex. 9E). The ALJ was tasked with considering what weight to assign Plaintiff's subjective reports, and such "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Plaintiff argues that the ALJ specifically erred by failing to discuss at greater length the impact of the number of Plaintiff's medical appointments and her activities of daily living, but the ALJ sufficiently evidenced his consideration of these factors,[1] and in any event, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Regarding Plaintiff's (ii) headaches, substantial evidence supports the ALJ's conclusion that treatment with Maxalt resulted in dramatic improvement in at least one type of headache, which Plaintiff described as arising from photo- or sono-phobia. (R. 1049). *See, e.g.*, (R. 756) ("These headaches have been quite responsive to Maxalt 5 mg daily"). The record indicates that Plaintiff began reporting a different type of daily headache—a bifrontal headache that changed positions—in December 2015, but medical imaging conducted in early 2016 revealed these headaches to be "sinus in nature," meaning arising from sinusitis. (R. 751). As the ALJ accurately noted, irrigation treatments in late 2016 resulted in improvement in the form of "minimal visits related to [Plaintiff's] sinusitis or headaches." (R. 1049). The record reveals a later worsening of Plaintiff's symptoms in 2019, but as observed by the ALJ, that worsening was related to a temporary sinus infection or "acute non-recurrent maxillary sinusitis." (R. 2787). *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as inability to work due to an "impairment which can be

---

[1] *See* (R. 1046) ("She testified that due to her numerous doctor visits, she would miss too many days of work"); (R. 1053–54) ("While the claimant alleged being 'bed stricken' since the later part of 2015 … [p]hysical examinations showed normal gait, normal strength, intact sensation, and normal neurological findings").

11

expected to … last for a continuous period of not less than 12 months"). Accordingly, there is no basis to find that the ALJ erred in his assessment of Plaintiff's headaches.

Plaintiff's arguments regarding her (iii) obesity and (iv) chronic diarrhea overlap, so those arguments are considered together. In part, Plaintiff contends—using website evidence for support—that the ALJ drew an impermissible conclusion that Plaintiff's obesity was incompatible with her reports of persistent nausea and intractable diarrhea. Even taking plaintiff's point as true,[2] the error was harmless. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). As an independent basis for discounting the reported severity of Plaintiff's chronic diarrhea, the ALJ relied on medical evidence showing that Plaintiff's "voiding dysfunction did not require the wearing of absorbent material," and that Plaintiff "needed to void [only] every two to three hours." (R. 916–17, 1052). Regarding Plaintiff's obesity, the ALJ reasonably concluded that while Plaintiff's obesity caused postural limitations, it did "not affect her ability to ambulate effectively as evidenced in her physical examinations where she had a normal gait." *See* (R. 1051, 1354), (R. 1579) ("5/5 motor strength bilateral lower extremities," "Gait: normal"). These medical records offer an alternative, legitimate basis for the ALJ to conclude that Plaintiff's obesity and chronic diarrhea were not as severe as alleged, and that they could be accommodated by the limitations proposed in the ALJ's RFC analysis.

Finally, regarding (v) Plaintiff's carpal tunnel syndrome, the ALJ acknowledged that objective medical evidence, and specifically an EMG study, showed signs of mild neuropathy which provided an etiology for Plaintiff's arm pain. (R. 2806). No evidence, however, supports Plaintiff's assertion that she was entirely unable to use her hands without pain. (R. 252). Rather, and as noted by the ALJ, the medical evidence indicates that Plaintiff suffers from few ensuing

---

[2] Extra-record website evidence may serve as a medical dictionary replacement. *See, e.g.*, *Storey v. Berryhill*, 776 F. App'x 628, notes 2, 4, 5, 8. (11th Cir. 2019).

functional limitations. For example, the medical record suggests that Plaintiff primarily suffered from nighttime pain, numbness, and muscle spasms, which symptoms were alleviated through the use of a nighttime brace, along with 10 mg of Flexeril ingested before bed as needed. (R. 1550). Similarly, at a medical appointment in April 2019, Plaintiff subjectively reported numbness or tingling on Tinel's and Phalen's tests, but objectively, Plaintiff demonstrated "normal stability" in both wrists," and Plaintiff's wrist "[m]otion was normal." Given these objective medical findings, along with the judicial deference owed to the Commissioner's decision, there is no basis to conclude that the ALJ erred by limiting Plaintiff's RFC to no right-handed overhead lifting, a general ten-pound weightbearing limitation, and the limitation that Plaintiff could perform frequent, but not constant, fingering. (R. 1046). Accordingly, Plaintiff's fifth and final challenge to the ALJ's RFC assessment also gives no cause for a second remand.

## CONCLUSION

For the reasons discussed herein, the Commissioner's decision denying Plaintiff J.M.R.'s application for disability benefits is hereby **AFFIRMED**.

**SO ORDERED**, this 19th day of August, 2021.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge